UNITED STATES DISTRICT COURT
SOUTHERN DISTRICT OF MISSISSIPPI
EASTERN DIVISION

MELISSA DANIELS                                              PLAINTIFF

VS.                           CIVIL ACTION NO. 3:10CV361TSL-MTP

CITY OF CANTON, MISSISSIPPI                                  DEFENDANT

MEMORANDUM OPINION AND ORDER

This cause is before the court on the motion of defendant
City of Canton, Mississippi for summary judgment pursuant to Rule
56 of the Federal Rules of Civil Procedure.  Plaintiff Melissa
Daniels has responded in opposition to the motion, and the court,
having considered the memoranda of authorities, together with
attachments, submitted by the parties, concludes that the motion
is well taken and should be granted.

Plaintiff, who is white, became employed by the City of
Canton as the events coordinator at the City's Multi-Purpose
Center in December 2006, and remained in that position until her
termination in September 2009, allegedly due to a reduction in
force implemented by the City on account of a decrease in revenues
during the 2009 fiscal year.  She filed the present action
alleging she was terminated on account of her race in violation of
Title VII of the Civil Rights Act, 42 U.S.C. § 2000e *et seq.*, and
42 U.S.C. § 1981.  The City denies that plaintiff was terminated
because of her race and asserts that her position was eliminated

as a cost-saving measure during an economic downturn.  Defendant
seeks summary judgment contending plaintiff cannot establish her
*prima facie* case, and in any event cannot demonstrate pretext in
the face of its legitimate non-discriminatory reason for her
termination.

In support of its motion, defendant has presented evidence
which shows that in fiscal year 2009, the City of Canton
experienced a revenue shortfall.  Therefore, in formulating the
2010 budget, Alderman Reuben Myers met with the various City
departmental directors to determine where cuts to the budget could
be made.  In his meeting with Glen Robinson, who was director of
the Multi-Purpose Center and Daniels' supervisor, Robinson agreed
that his department was overstaffed and thus did not object when
Myers proposed that Daniels' position be eliminated in the 2010
budget.  Following these meetings, Myers recommended the
elimination of seven positions, five held by black employees and
two held by white employees.  Plaintiff's position was among those
proposed to be eliminated.  The proposed budget was approved by a
6-to-1 vote at the City's September 15, 2009 Board meeting.
Following plaintiff's termination, her job duties were assumed by
Robinson, who is also white.

After considering all the competent evidence submitted by the
parties, the court is of the opinion that regardless of whether
she could prove a *prima facie* case of discrimination under the

2

familiar <u>McDonnell-Douglas</u> framework,[1] plaintiff cannot prevail in

this case because she cannot prove that the City's proffered

legitimate, nondiscriminatory reason for her termination, is

pretext for race discrimination.[2]

---

[1]     The court would note that it rejects plaintiff's
argument that, under <u>United States Postal Service Board of
Governors v. Aikens</u>, 460 U.S. 711, 715, 103 S. Ct. 1478, 75 L. Ed.
2d 403 (1983), as interpreted by the D.C. Circuit in <u>Brady v.
Office of the Sergeant at Arms</u>, 520 F.3d 490, 493-94 (D.C. Cir.
2008), the plaintiff is relieved of her burden of establishing a
*prima facie* case where the defendant has articulated a legitimate,
non-discriminatory reason for the termination.  <u>See</u> <u>Atterberry v.
City of Laurel</u>, 2010 WL 4561339, *1 n.1 (5th Cir., Nov. 10, 2010)
(declining to follow <u>Brady</u>).

[2]     The court's ability to consider whether Daniels could
demonstrate a *prima facie* case is hampered by the parties' failure
to correctly identify and hence to address the elements of the
*prima facie* case.  The City initially argued for application of
the elements of a *prima facie* case in a typical race
discrimination case, (1) membership in a protected class; (2)
qualifications for the position in question; (3) an adverse
employment action; and (4) replacement by someone outside the
protected class or evidence that other similarly-situated
employees outside the protected class were treated more favorably.
<u>See</u> <u>Bryan v. McKinsey & Co., Inc.</u>, 375 F.3d 358, 360 (5th Cir.
2004).  The City argued that plaintiff, whose position was
eliminated, could not establish the fourth element.
     Daniels asserted in response that the fourth element of a
*prima facie* case in a reduction-in-force case is modified so that
plaintiff is not required to show that she was replaced by someone
outside the protected class or that a similarly situated
individual outside the protected class was treated more favorably,
and instead is required to show that the circumstances regarding
her layoff give rise to an inference of discrimination.
     The City responded that the modified reduction-in-force *prima
facie* case does not apply here because of the small number of
positions involved in its reduction in force, and that in any
event, even in a reduction-in-force case, the plaintiff must show
that her duties were absorbed by someone outside of the protected
class; and, since plaintiff has conceded that her job duties were
assumed by a white employee, she cannot prove a *prima facie* case.

Under the McDonnell Douglas framework, once a plaintiff has established her *prima facie* case, a presumption of discrimination arises. Laxton v. Gap Inc., 333 F.3d 572, 578 (5th Cir. 2003) (citing Wallace v. Methodist Hosp. Sys., 271 F.3d 212, 219 (5th Cir. 2001)). The employer must then articulate a legitimate, nondiscriminatory reason for the termination. Id. Upon presentation of a legitimate, nondiscriminatory reason, the presumption of discrimination dissipates. Id. "The plaintiff then bears the ultimate burden of persuading the trier of fact by a preponderance of the evidence that the employer intentionally

---

In the court's opinion, this case is properly viewed as a reduction in force. In the Fifth Circuit,

to establish a *prima facie* case of intentional discrimination in a reduction-in-force case, a plaintiff must establish the following elements: (1) he is a member of a protected group; (2) he was adversely affected by the employer's decision; (3) *he was qualified to assume another position at the time of discharge*; and (4) *there is sufficient evidence, either circumstantial or direct, from which a fact finder may reasonably conclude that the employer intended to discriminate in reaching the adverse employment action, or others who were not members of the protected class remained in similar positions.* Nichols v. Loral Vought Sys. Corp., 81 F.3d 38, 41 (5th Cir. 1996); Amburgey v. Corhart Refractories Corp., Inc., 936 F.2d 805, 812 (5th Cir. 1991).

Ortiz v. Shaw Group, Inc., 250 Fed. Appx. 603, 606 (5th Cir. 2007) (emphasis added). Neither party has specifically addressed the third element, Daniels' qualification to assume another position at the time of her discharge. With regard to the fourth element, plaintiff does not appear to make any distinction between the facts and circumstances which would support the fourth element and those which she contends would create a jury issue as to pretext. Accordingly, the court will examine these arguments in the context of her attempt to demonstrate pretext in rebuttal to defendant's articulated legitimate non-discriminatory reason.

discriminated against her because of her protected status." <u>Id</u>.

As the Fifth Circuit observed in <u>Laxton</u>:

> To carry this burden, the plaintiff must produce
> substantial evidence indicating that the proffered
> legitimate nondiscriminatory reason is a pretext for
> discrimination.  <u>See</u> <u>Reeves [v. Sanderson Plumbing</u>
> <u>Prods., Inc.</u>, 530 U.S. 133, 142, 120 S. Ct. 2097, 2106,
> 147 L. Ed. 2d 105 (2000)].  . . . A plaintiff may
> establish pretext either through evidence of disparate
> treatment or by showing that the employer's proffered
> explanation is false or "unworthy of credence." <u>Id.</u>;
> <u>Reeves</u>, 530 U.S. at 143, 120 S. Ct. at 2106.  An
> explanation is false or unworthy of credence if it is
> not the real reason for the adverse employment action.
> <u>See</u> <u>Sandstad v. CB Richard Ellis, Inc.</u>, 309 F.3d 893,
> 899 (5th Cir. 2002).  Evidence demonstrating that the
> employer's explanation is false or unworthy of credence,
> taken together with the plaintiff's prima facie case, is
> likely to support an inference of discrimination even
> without further evidence of defendant's true motive.
> <u>Id.</u> at 897; <u>Russell [v. McKinney Hosp. Venture</u>, 235 F.3d
> 219, 223 (5th Cir. 2000)].
> . . .
> Evidence is "substantial" if it is "'of such quality and
> weight that reasonable and fair-minded men in the
> exercise of impartial judgment might reach different
> conclusions.'" <u>Long v. Eastfield College</u>, 88 F.3d 300,
> 308 (5th Cir. 1996)(<u>quotations omitted</u>).

Since the City has presented a legitimate, nondiscriminatory

reason for Daniels' termination, <u>see</u> <u>Okon v. Harris County</u>

<u>Hospital Dist.</u>, 2011 WL 1990836, *1 n.1 (5th Cir. May 23, 2011)

(holding that reduction-in-force is legitimate, nondiscriminatory

reason for discharge)(citation omitted), then to survive summary

judgment, plaintiff must present sufficient competent evidence to

create a jury issue on the issue of pretext.  Plaintiff contends

she has done so, as her evidence tends to show that the City's

proffered reason for her termination is unworthy of credence for

several reasons.  Specifically, she contends that statistical

evidence shows that, even prior to her termination, the City had begun a campaign to increase its percentage of black employees and that after her termination, it continued this campaign, hiring fifty more black employees while failing to give white applicants an opportunity to apply.  She further contends that pretext is indicated by the fact that in October 2010, the Board of Aldermen voted to reinstate one of the positions that it eliminated in September, a position held by a black female.  She asserts that pretext is shown because the City not only denied her request to be transferred to one of two newly created positions in the City Clerk's office but also failed to post the openings for the new jobs.  Lastly, plaintiff maintains that she has demonstrated pretext due to the fact that the elimination of her position did not eliminate the Multi-Purpose Center's budget shortfall.  In the court's opinion, plaintiff's evidence fails to create an issue of fact on her claim of pretext.

Obviously, the fact that the elimination of plaintiff's position merely reduced but did not eliminate the revenue deficit in her department does not bear on the credibility of the City's legitimate nondiscriminatory reason for terminating plaintiff, or otherwise suggest a discriminatory animus.

Moreover, while the use of statistical evidence may have some value in identifying pretext in a reduction in force, Walther v. Lone Star Gas Co., 977 F.2d 161, 162 (5th Cir. 1992) (explaining limited role of statistical evidence in reduction-in-force case),

the court here is not persuaded that the City's hiring practices prior to plaintiff's termination are relevant.  In any event, however, the statistical evidence cited by plaintiff does not support the proposition for which it is offered.  Plaintiff submits that statistical data from the EEOC file establishes that from June 2007 to June 2009, the number of black City employees increased by more than sixty and that the percentage of black employees increased from seventy-six percent to eighty-four percent.  In fact, however, the documents presented by plaintiff do not show an increase in the number or percentage of black employees but rather a dramatic increase in the number and percentage of white employees and decrease in the number and percentage of black employees.  Plaintiff posits that the figures on the report at issue are correct but are in the wrong columns and that "black" employees should read "white" employees and vice versa.  The court cannot merely assume that the document on which plaintiff relies is inaccurate and that plaintiff's interpretation of the document is correct.  Rather, in her quest to demonstrate pretext, plaintiff was required to present evidence which, if it existed, would clarify the claimed discrepancy.

Similarly, the chart offered by plaintiff in support of her assertion that the City has hired fifty black employees since the time of her termination is unreliable and thus not competent proof of pretext.  In her affidavit, plaintiff explains that using Board minutes produced in discovery, she created the chart to identify

black employees who have been hired since her termination. However, the City's objection that the chart, which admittedly was not produced in discovery, is inadmissible hearsay, is well taken. Moreover, the document is otherwise unreliable, as demonstrated by the affidavit of City Clerk Valerie Smith, submitted by the City with its rebuttal, who explains that seven of the new putative employees listed on plaintiff's chart are actually unpaid volunteers; six of the individuals shown to be new hires were employed by the City before plaintiff's layoff; another six are not employed by the City, although they may have been considered for positions at some time; three are independent contractors, not City employees; and two individuals identified as black are, in fact, white. Clearly, this document does not have a tendency to demonstrate pretext.

Daniels further asserts that a black employee, Rilanda Reaves, received preferential treatment during the 2010 budget process because Reaves' position, while initially eliminated, was reinstated by the Board of Aldermen shortly after the 2010 budget was passed, with Reaves never missing a paycheck and never really facing the possibility of being laid off. Plaintiff's assertion that Reaves' position was not, in fact, eliminated is based on a conversation with Reaves in which Reaves allegedly told plaintiff that Reaves' supervisor had told her that her job was not really eliminated. This is clearly inadmissible hearsay.

Furthermore, Alderman Reuben Myers has explained in his affidavit that Reaves' position of Assistant Director within the Parks and Recreation Department was eliminated in the 2010 budget passed by the Board on September 15, 2009 but was subsequently reinstated at the October 6, 2009 Board meeting after Reaves' supervisor petitioned to eliminate a lawn-service contract to provide funding for Reaves' position.  Plaintiff's supervisor did not similarly petition to have her reinstated by agreeing to offset other department expenses.  Reaves was obviously not similarly situated to Reaves, and Reaves' treatment does not tend to show pretext.

Plaintiff next asserts that when she was informed that her position was to be eliminated, she requested to be transferred to one of two newly-created positions in the City Clerk's office but was told that a transfer was not possible and that she would have to apply for the positions, and yet she was denied the opportunity to apply the positions because the positions were never posted.

Although plaintiff complains she was not transferred, she does not appear to contend that the City had any duty to transfer her to another position; instead, she evidently claims that the City's refusal to transfer her, coupled with its denying her the opportunity to apply for and be considered for available positions, indicates a discriminatory intent.  To the extent plaintiff might be claiming the City had a duty to transfer her to avoid terminating her as part of the reduction in force, she has

offered no authority to support her position.  The vast majority
of courts considering this issue have held that an employer has no
duty to transfer an employee to another position when it reduces
its work force for economic reasons.  See, e.g., Pages-Cahue v.
Iberia Lineas Aereas de Espana, 82 F.3d 533, 538-39 (1st Cir.
1996) ("Appellants cite no authority for the proposition that an
employer conducting a reduction in force must offer such transfers
or relocations [to lesser positions]-in fact, authority exists for
the proposition that employers face no such obligation."); Jameson
v. Arrow Co., 75 F.3d 1528, 1532 (11th Cir. 1996) ("We emphasize
that the ADEA does not mandate that employers establish an
interdepartmental transfer program during the course of a RIF.");
Taylor v. Canteen Corp., 69 F.3d 773, 780 (7th Cir. 1995) ("[T]he
ADEA does not mandate that employers establish an
interdepartmental transfer program during the course of a RIF; an
employer incurs no duty to transfer an employee to another
position when it reduces its work force for economic reasons.");
Rose v. Wells Fargo & Co., 902 F.2d 1417, 1422-23 (9th Cir. 1990)
("Moreover, there is no duty to transfer employees to another
position once his or her original position is no longer needed.");
Ridenour v. Lawson Co., 791 F.2d 52, 57 (6th Cir. 1986) ("Where an
employer reduces his workforce for economic reasons, it incurs no
duty to transfer an employee to another position within the
company.").  It would be a different matter if plaintiff had
presented evidence tending to show that the City's refusal to

transfer her was because of her race.  Cf. Williams v. General
Motors Corp., 656 F.2d 120, 129 (5th Cir. 1981) (holding that third
requirement of *prima facie* case under ADEA in reduction-in-force
case requires that a plaintiff produce evidence that would lead a
factfinder "reasonably to conclude either (1) that defendant
consciously refused to consider retaining or relocating a
plaintiff because of his age, or (2) defendant regarded age as a
negative factor in such consideration").  However, there is no
such evidence.  Plaintiff claims that the City never posted the
newly-created positions, and insinuates that this was done in an
effort to prevent her from applying, which she theorizes was
because of her race.  However, the evidence does not support her
position.  Plaintiff states that after her termination, she
"continually checked job postings at the WIN job center for at
least six months and asked friends who worked for the city to let
[her] know if the jobs were posted in house," and that she "never
saw nor heard about either of the jobs being posted and/or
applications for the positions being taken."  However, the City
has presented an affidavit from City Clerk Valerie Smith stating
that both jobs were posted on the bulletin board at City Hall.
Plaintiff's affidavit, in which she asserts that no one told her
about the postings at City Hall, does not refute Smith's
affidavit.  For these reasons, the court rejects plaintiff's
argument that the City's failure to transfer her or hire her for
open positions supports her assertion of pretext.

Based on all of the foregoing, the court concludes that plaintiff has failed to create a genuine issue of material fact on the issue of pretext and that the City's motion for summary judgment should therefore be granted.

Accordingly, it is ordered that the City's motion for summary judgment is granted.[3]

A separate judgment will be entered in accordance with Rule 58 of the Federal Rules of Civil Procedure.

SO ORDERED this <u>24th</u> day of October, 2011.


                                        <u> /s/ Tom S. Lee                </u>
                                        UNITED STATES DISTRICT JUDGE

---

[3]      For the reasons set forth in the court's opinion, it is likewise clear that plaintiff is not entitled to relief on her § 1981 claim.  <u>Saucedo-Falls v. Kunkle</u>, 299 Fed. Appx. 315, 323 (5th Cir. 2008) ("Section 1983 and [T]itle VII are parallel causes of action.  Accordingly, the inquiry into intentional discrimination is essentially the same for individual actions brought under sections 1981 and 1983[ ] and Title VII.").